UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Shonyea Douglas,

                       Plaintiff,                       **Hon. Hugh B. Scott**

                                                         05CV59

                       v.                               **Decision**
                                                          **&**
                                                         **Order**

Jordan Bonafede,

                       Defendant.
_____

     Before the Court is the defendant's motion for summary judgement and to stay discovery (Docket No. 13).

### Background

     The plaintiff, Shonyea Douglas ("Douglas") brings this action alleging that his civil rights were violated when he was allegedly strip searched by a police officer at the side of a public highway. Douglas alleges that on January 26, 2002 he was a passenger in a car driven by Taretha Johns ("Johns"). The plaintiff states that Poliko Irvin was also present in the car at that time. (Docket No. 1 at ¶ 5). Douglas claims that at some point, State Trooper Jordan Bonafede ("Bonafede") directed Johns to pull over. According to Douglas, Bonafede made the occupants get out of the car; walk back to his patrol car; empty their pockets on the hood of the patrol car;

1

and submit to a pat down. (Docket No. 1 at ¶¶ 9-17). At some point, a second State Trooper arrived at the scene. (Docket No. 1 at ¶18). Douglas contends that Bonafede subsequently found several marijuana seeds in the back seat of the car in which the plaintiff was traveling. (Docket No. 1 at ¶ 20). After some further discussion, Douglas states that Bonafede advised them that he was not going to arrest them, but that he was going to strip search them. (Docket No. 1 at ¶ 26). The plaintiff claims that Bonafede then pulled Douglas' "pants and undergarments down to his ankles thereby visibly exposing plaintiff's groin and buttocks area to the full view of everyone present and several motorists passing by in their vehicles along the busy highway." (Docket No. 1 at ¶ 29). Douglas asserts that his "naked lower body was illuminated by the emergency lights" of the patrol cars. (Docket No. 1 at ¶ 30). Pursuant to 42 U.S.C. § 1983, the plaintiff claims that Bonafede subjected him to an unreasonable search in violation of his Fourth Amendment rights.

  The state court suppression hearing testimony of Bonafede and the other officers differs from the allegations in Douglas' complaint. According to Bonafede, as he was proceeding eastbound on the New York State Thruway (near the Town of Phelps, New York) he observed a car driven by Johns that did not have a plate light or rear view mirror (Docket No. 14 at 0006). He directed the driver to pull over, approached the vehicle from the passenger side and asked the driver for identification. As he approached the vehicle, Bonafede stated that he saw Douglas "stick his hands down his pants or somewhere in the front area." (Docket No. 14 at 0011). When asked if he put something down his pants, Douglas allegedly responded "no, I was putting something in the glove compartment." (Docket No. 14 at 0011). According to Bonafede, "as soon as a window rolled down I observed a heavy odor of burnt marijuana." (Docket No. 14 at 0007). Bonafede testified that he obtained identification from all three individuals and went back

to his patrol vehicle to call for assistance. He re-approached the vehicle and directed all three occupants to exit. He proceeded to perform a "cursory search" to see if they possessed weapons. (Docket No. 14 at 0009). Another State Trooper, Michael Jurek, arrived at the scene. Bonafede performed a search of the vehicle which revealed some marijuana seeks and small pieces of stem in the vehicle. As Bonafede was conferring with Jurek as to how to proceed, Bonafede observed Douglas reaching for his groin area in what, to the officer, appeared to be an attempt to "hide something or secret something." (Docket No. 14 at 0010). According to Bonefede, Douglas "grabbed it several times." (Docket No. 14 at 0010). Bonafede testified that Douglas had at least three layers of clothing on: pants, long-underwear, and shorts under the long underwear. (Docket No. 14 at 0031-0032). Bonafede stated that as soon as he attempted to search Douglas, he would "not remove his hands from his pants." (Docket No. 14 at 0011-0012). As this was occurring, Bonafede observed the top of a plastic bag inside Douglas' pants on his right leg. As he attempted to get Douglas' attention regarding the bag, Douglas "reached in and threw three bags out, which landed on the ground." (Docket No. 14 at 0012). Bonafede alerted Jurek and advised Douglas to "come over and place his hands on the vehicle because he was going to be placed under arrest." At that point, Douglas fled, running across all four lanes of the thruway and climbing a hill on the other side. (Docket No. 14 at 0012-0013). Bonafede did not chase after Douglas and lost track of Douglas as he went over the hill. (Docket No. 14 at 0013). The bags thrown by Douglas were found to contain marijuana, crack cocaine and 30 or 40 glassine bags and a razor blade. (Docket No. 14 at 0015).

    The issue of whether or not Bonafede pulled Douglas' pants down was not argued at length during the state court suppression hearing. The most significant mention of the subject

came on cross-examination, when Bonafede was asked: "Did [Douglas'] pants ever fall to his ankles or anything like that while you were doing that?" (Docket No. 14 at 0031). Bonefede responded "Not to my knowledge" and then proceeded to note that Douglas was wearing three layers of clothing. (Docket No. 14 at 0031-0031).

Douglas' testimony, both before the Grand Jury and at the criminal trial in this case appear to contradict the claim in the complaint that Bonafede actually pulled Douglas' pants down exposing him to public view. Before the Grand Jury, Douglas made conclusory statements about being subjected to a strip search, but described Bonafede's actual conduct as follows:

> A:   ... After he strip searched [one of the other occupants of the car], he came to me. I said, "I'm not going to strip search." He took the camera off. A lot of things are going through my head like why did he turn the camera off and now he's strip searching me. I was rebellious, like, "Aint't nobody going I my pants or doing nothing." He literally grabbed by pants and was struggling. This is where my resistance come in because I'm not letting him go in my pants. I keep telling him, "If you want to go in my pants, arrest me. You already had me in the car. If you felt I did something wrong, you could've arrested me and read me my rights and took me down and then we could've done that." He grabs my pants and there's resisting going on. I got scared. I'm high on weed. I smoke marijuana.
>
> Q:   You were high?
>
> A:   Yes, I was high. At this time I'm scared on the highway, going in my pants. I don't know what is the outcome. I break loose and I'm running. I run accoss the street. I could've got killed.
>
> Q:   Thruway?
>
> A:   Yes. I took the chance.

(Docket No. 29, Exhibit A at pages 51-52).

Similarly, although he uses the phrase "strip search," Douglas' testimony at trial suggests that, at best, Bonafede attempted to search inside Douglas' pants. Douglas testified:

4

> A: ... The other trooper, Jurek, I believe his name is, he puts me in the car. And Bonafede comes to me and he said, pull your pants down. You know, I'm not pulling down my pants. I feel that's a violation. Why do you feel you have to strip search us? Why don't you arrest us and take us down. I'm in the car. I'm at the car trying to explain it to him, I've been locked up before and I never seen nobody get strip searched. So at that point he said, you don't want to get strip searched? And I said, no. So he like forced – grabbed my pants, you know, just trying to overpower me with my pants, and I'm just holding my pants, why you trying to strip search me, and he just trying to get my pants loose. And once I break loose, I start running. I got scared at that point as far as him grabbing my drawers.
>
> Q: Where did you run?
>
> A: I ran straight across the highway to my left.

(Docket No. 29, Exhibit B at pages 209-209).

Douglas apparently obtained a bicycle from a nearby residence and was apprehended a short time later by State Trooper Philip Mosack some distance down the thruway after a brief struggle. (Docket No. 14 at 0051-0053). Douglas was charged, and ultimately convicted, of burglary, petit larceny, resisting arrest, criminal possession of a controlled substance, criminally using drug paraphernalia, and unlawful possess of marijuana.

The defendant now moves for summary judgment claiming that the plaintiff's §1983 claim is precluded under Heck v. Humphrey, 512 U.S. 477 (1994).[1] In Heck, the Supreme Court held that a state prisoner's claim for damages is not congnizable under §1983 "if a judgement in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ...

---

[1] The defendant previously moved for summary judgement contending that the doctrine of collateral estoppel bars the plaintiff from maintaining the instant claim inasmuch as the reasonableness of the search was determined after a suppression hearing during the state court criminal trial. The Court determined that the issue of whether or not Bonafede had pulled down Douglas' pants exposing him to the public had not, in fact, been specifically litigated in the state court criminal proceeding. (Docket No. 21 at page 5). This determination was based solely upon the narrow question of collateral estoppel which was before the Court.

unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. In this action, the plaintiff asserts that the Bonafede's alleged conduct in effectuating a search – that he pulled down Douglas' pants to find the drugs he was concealing – was unconstitutional. The defendant argues that if this search was found to be unconstitutional, as the plaintiff claims, it would imply that his conviction for possession of the drugs was also invalid. The plaintiff asserts that Heck does not apply to §1983 cases claiming excessive force or unreasonable searches where the "independently actionable civil rights violations are sufficiently distinct from other evidence that could support a conviction." (Docket No. 39 at page 5). The plaintiff relies upon Bourdon v. Vacco, 231 F.3d. 625 (2d. Cir. 2000), a summary order in which the Second Circuit vacated part of a District Court decision grating summary judgment against the plaintiff's excessive force and unreasonable search claims. In Bourdon, the Second Circuit recognized that the inquiry as to whether or not a recovery on a §1983 was "inherently a factual one." Based upon the facts of that case, the Second Circuit found that Bourdon's claims of excessive force did "not implicate the invalidity of Bourdon's conviction." Similarly, the Second Circuit found that Bourdon's claims based upon an alleged unreasonable search and seizure "may not implicate the invalidity of his conviction because there may be independent sources of evidence against him or harmless error in admitting evidence obtained in that search." Bourdon is distinguishable from the instant case. Here, the plaintiff has not articulated a basis to conclude that Douglas' underlying conviction would not be implicated if his factual allegations were accepted, and the search in question was deemed an unconstitutional act by Bonafede. Indeed, the defendants assert that the sole evidence supporting Douglas' conviction of criminal possession of a controlled substance and unlawful possess of marijuana was the drugs found in

6

the course of the search in question. The plaintiff has not articulated a basis to dispute this assertion. Thus, the plaintiff's claims in this case cannot stand under the principles set out in Heck.

In addition, as discussed above, the plaintiff's own prior testimony, given twice under oath, appears to contradict the central allegations underlying the claims in his complaint. In his complaint, Douglas asserts that Bonafede "pulled down his pants and undergarments down to his ankles thereby visibly exposing plaintiff's groin and buttocks area to the full view of everyone present." (Docket No. 1 at ¶ 29). However, as quoted above, in his Grand Jury and trial testimony, Douglas states that he broke away from Bonafede and ran across the highway as Bonafede attempted to search his pants. This testimony is inconsistent with Douglas' claim that his pants and undergarments were pulled down to his ankles, rendering his claims utterly implausible. Factual allegations asserted in the context of a §1983 action which are contrary to the plaintiff's own prior sworn testimony cannot be the basis to preclude summary judgment. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001); Shapiro v. City of Glen Cove, 2007 WL 1492479, *1 (2d. Cir. 2007) (same); Jeffreys v. City of New York, 426 F.3d 549, 555 (2d. Cir. 2005)(when the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim.) Summary judgment dismissing the plaintiff's complaint is appropriate on this basis as well.

The Court declines to reach as to the remaining arguments presented in the defendant's motion for summary judgment.

The complaint in this case is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave

to appeal to the Court of Appeals as a poor person is denied. <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

  So Ordered.

                /s/ *Hugh B. Scott*
                United States Magistrate Judge
                Western District of New York

Buffalo, New York
September 27, 2007